RECEIVED
DEC 18 2012
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| Cimarex Energy Co. | Civil Action No. 6:11-cv-1713 (Lead) |
| | 6:11-cv-2146 (Member) |
| versus | Judge Richard T. Haik, Sr. |
| Chastant | Magistrate Judge C. Michael Hill |

## MEMORANDUM RULING

Before the Court are Cross-Motions For Summary Judgment, filed by plaintiff Cimarex Energy Company ("Cimarex") [Rec. Doc. 35] and defendant, Harold P. Chastant, Jr., [Rec. Doc. 40][1], Chastant's opposition memorandum [Rec. Doc. 39], and Cimarex's reply thereto [Rec. Doc. 46.] and Cimarex's opposition memorandum [Rec. Doc. 47]. For the reasons that follow, Cimarex's motion will be granted and Chastant's motion will be denied.

*I. Background*

This matter consists of two consolidated cases. In the initial action, Cimarex Energy Company filed suit for Declaratory Judgment on September 23, 2011 against defendant Harold P. Chastant, Jr., individually and in his representative capacity as trustee of the Harold P. Chastant, Jr. Trust and as purported class representative, seeking a judgment declaring that Cimarex does not owe Chastant additional royalties.[2] Civil Action No. 6:11-1713. In the second action, Chastant filed suit for additional royalties in state court and Cimarex removed the action to this Court on December 13, 2011. Civil Action No. 6:11-2146. Both actions involve the same allegedly underpaid royalties.

---

[1] Chastant's Motion for Summary Judgment is identical to its Opposition Memorandum.

[2] Cimarex's Declaratory Judgment Action was prompted by a letter sent by Chastant demanding additional royalties. *R. 35.*

## II. Summary Judgment Standard

A motion for summary judgment shall be granted if the pleadings, depositions, and affidavits submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56.* Once the movant produces such evidence, the burden shifts to the respondent to direct the attention of the court to evidence in the record sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The responding party may not rest on mere allegations made in the pleadings as a means of establishing a genuine issue worthy of trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. *Id.* Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

## III. Analysis

The issue before the Court is whether or not the lease between Cimarex and Chastant (the "Lease") and Louisiana law obligate Cimarex to pay royalties on amounts Cimarex generated by its separate financial transactions, or "hedging" activity, which would be in addition to royalties already being paid on the market value of the oil or gas produced from the property subject to the Lease. Chastant argues that the Lease as well as the Louisiana Mineral Code's royalty law provides the basis for his assertion that Cimarex must pay royalties on the money they receive from their hedging activity.

The royalty provision of the Lease with respect to crude oil provides:

> (a) on oil . . . one-eighth (1/8) of that produced and saved from the land . . . . Lessee may sell Lessor's such oil at the best market price obtainable and pay Lessor **the price received f.o.b. the leased property**, less any severance or production tax imposed thereon. (Emphasis added).

R. 35-4, ¶ 7. With respect to natural gas, the Lease provides:

2

> (b) On gas from or attributable to said land and sold . . . one-eighth (1/8) of **the market value at the mouth of the well** of the gas so sold . . . . The price to be used in computing the market value at the mouth of the well shall be the price received by Lessee under an arm's length gas sales contract prudently negotiated in light of the facts and circumstances existing at the time of consummation of such contract . . . . (Emphasis added).

*Id.* Thus, under the terms of the Lease, Cimarex is only obligated to pay royalties on the market value proceeds from the sale of the crude oil or natural gas that is produced from the well or the leased property.[3] There is no allegation that Cimarex has failed to pay such royalties.

Chastant contends that because Cimarex factors in the hedge price they receive as part of the commodity prices they report on the 10-K form filed with the SEC, the hedge price constitutes "market value" under the Lease. Chastant also contends that the Louisiana Mineral Code definition of "Royalty" supports its position, as follows:

> "Royalty," as used in connection with mineral leases, means any interest in production, **or its value, from or attributable to** land subject to a mineral lease, that is deliverable or payable to the lessor or others entitled to share therein. Such interests in production or its value are "royalty," **whether created by the lease or by separate instrument**, if they comprise a part of the negotiated agreement resulting in execution of the lease. "Royalty" also includes sums payable to the lessor that are classified by the lease as constructive production."

LSA R.S. 31:122 (Emphasis added). Chastant contends that the above terms "or its value, from or attributable to ..." and "whether created by the lease or by separate instrument..." includes the hedge entered into by a lessee such as Cimarex.

In response, Cimarex maintains that, pursuant to the Lease agreement, all of its oil and gas production is sold in the field, either at the well head or at the tailgate of the processing plant (i.e. f.o.b.), and therefore, Cimarex's hedging activity has no effect on the

---

[3] F.O.B. stands for "Free On Board." "[T]he Uniform Commercial Code recognizes that when parties specify 'F.O.B. the place of destination,' the risk of loss during transport is on the seller." *HB Plus Bandamatic, Inc. v. MTC South, Inc.*, 2011 WL 2678947, 6 (S.D.Tex.,2011).

3

"market value" price Cimarex receives for the production.[4] *R. 35, Aff. Of Shonsey,* ¶ 6. Cimarex represents that its "hedging activity" was "purely financial activity" in that it involved "simply buying or selling financial positions." Cimarex explains that its "[c]ommodities futures trading involves 'derivatives,' that is, 'a financial instrument whose value derives from the value of an underlying asset, reference rate, or index' .... 'A derivative is a bet, not an investment - a bet on the direction, dimension, duration and speed of changes in the value of another financial instrument. *Tormey, Note: A Derivatives Dilemma: The Treasury Amendment Controversy and the Regulatory Status of Foreign Currency Options*, 65 Fordham L. Rev. 2313, 2315 n.1 (1997)' .... [a] party can 'hedge' the risk of a price fluctuation by using these financial transactions - derivatives - to provide some insurance in the event that the price of the underlying commodity - the natural gas or the crude oil - drops below a certain level." *Id.,* at 5.

"Royalty" is defined as the "landowner's share of production, free of expenses of production." *Condrey v. Sun Trust Bank of Georgia*, 429 F.3d 556, 565 (5th Cir.2005). A royalty interest is an intangible property interest entitling its owner to a share of production, in kind or cash, if, as and when there is production, free of the costs of production. *Connecticut Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 265-266 (5th Cir. 2002) (citing 8 Howard R. Williams & Charles J. Meyer, Oil and Gas Law 952 (2001)). Here, the Lease specifies that royalties on natural gas are to be paid on the "market value at the mouth of the well" and royalties on crude oil are to be paid on the market price of crude oil "f.o.b. the leased premises." Cimarex argues that these Lease provisions are in accord

---

[4] It is undisputed that "hedging is generally defined as '[a] risk management strategy used in limiting or offsetting probability or loss from fluctuations in the prices of commodities, currencies, or securities.' *Businessdictionary.com.* 2012. Http://www.businessdictionary.com (24 May 2012). Specifically, to 'hedge' against price risk, one enters the futures market and buys a futures contract under which he obtains a contract position that minimizes risk against price fluctuations. P. Johnson, Commodities Regulation, § 1.12, at 39." *R. 35, p. 4.*

4

with long-standing principles of Louisiana law that "market price" in a royalty clause means market price of oil or gas at the well/lease/field and not at some distant future transaction made because of the oil or gas produced. *See, Wall v. United Gas Public Service Co.*, 152 So. 561, 564 (La.1934) ("[T]he contract here involved stipulates that [the lessee] should pay one-eighth of the 'value of such gas' calculated at the 'market price,' which means the market price at the well or in the field and not the price which it would bring in a distant market."); *see also, Sartor v. Arkansas Natural Gas Corporation*, 321 U.S. 620 (1944); *Freeland v. Sun Oil Company*, 277 F.2d 154 (5th Cir.1960); and, *Merritt v. Southwestern Electric Power Co.*, 499 So.2d 210, 214 (La.App. 2 Cir.1986) (citing *Sartor, Freeland*, and *Wall*).

Citing *Frey v. Amoco Production Co.*, 603 So.2d 166 (La.,1992), Chastant argues that "the payments received by Cimarex constitutes part of the price, or the total revenues received by Cimarex as a result of Cimarex purchasing the hedged derivatives because of the gas produced by the Lease." R. 39, p. 8. In essence, Chastant asks the Court to find that *Frey* overruled the well-settled jurisprudence in Louisiana that royalty revenue represents the market price or value of the production at the well, lease, or field, and hold that a lessor is entitled to share in "economic benefits" received from its hedging activity simply because it is related to the oil and gas produced from the lease.

In *Frey*, the Louisiana supreme court held that the mineral lessee, after receiving a settlement in a "take-or-pay" dispute with the gas buyer, had to pay the mineral lessor his interest from the damages awarded to the mineral lessee. *Id., at 167.* The court found that the settlement was part of the "amount realized" portion of the mineral lease and, therefore, subject to the lessor's royalty clause. *Frey* provides no legal basis for Chastant's allegation that a lessor can claim royalties on revenue derived from separate transactions the lessee enters into because of the oil or gas production. Rather, the *Frey* court specifically held that

5

the take-or-pay payments were part of the "amount realized" under the terms of the lease at issue, and reaffirmed the well-settled principle that "the right of the owner of a royalty interest is restricted to a share in production if and when it is obtained." *Id., at 179, FN 19* (citing *Union Oil Co. of California v. Touchet*, 229 La. 316, 325 (1956)). Most recently, in *Columbine II Ltd. Partnership v. Energen Resources Corp.*, 129 Fed. Appx. 119, 122-123 (5th Cir. 2005), the Fifth Circuit again recognized the existence of this long-standing law - unless that principle is expressly negated by specific language in the lease.

Chastant provides no analysis nor any explanation of how *Frey*, a take-or-pay case, applies to his "hedging" claim. The Court is unaware of, nor does Chastant cite, any jurisprudence which considers such a claim. Rather, Chastant invites the Court to overturn decades of Louisiana oil and gas law precedent, become the first Court to hold that under standard lease language, royalties are based on something other than the price or value of the oil or gas at the well, lease, or field, and allow lessors to claim royalties on the revenue derived from essentially any transaction that a lessee enters into because of the oil or gas. The Court declines.

### *VI. Conclusion*

Based on the foregoing, the Motion For Summary Judgment filed by Cimarex Energy Company, *R. 35*, will be granted and the Motion For Summary Judgment filed by Harold P. Chastant, Jr., *R. 40*, will be denied.

Richard T. Haik, Sr.
United States District Judge